**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JAVIER ROCHA-ALONSO,

      Petitioner,

v.                                       No. 23-cv-906 MIS-SCY
                                               No. 22-cr-1568 MIS-SCY

UNITED STATES OF AMERICA,

      Respondent.

**ORDER VACATING IN PART ORDER OF REFERENCE, DENYING IN PART**
**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT**
**SENTENCE, GRANTING MOTION TO APPOINT COUNSEL, AND REFERRING**
**REMAINING ISSUE TO MAGISTRATE JUDGE**

      THIS MATTER is before the Court on Petitioner Javier Rocha-Alonso's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (CV Doc. 1, CR Doc. 21).[1] Petitioner is a federal prisoner proceeding *pro se*. He alleges due process violations in his deportation proceedings and ineffective assistance of counsel in both his criminal case and in the revocation of his supervised release in a separate but related criminal matter. Having reviewed the parties' submissions and the record, the Court will deny all of Petitioner's grounds for relief, except for the claim that his counsel was ineffective for failing to file an appeal. This limited issue must be resolved following an evidentiary hearing. Counsel will be appointed to represent Petitioner at the hearing.

---

[1]      On November 12, 2024, the Court issued an Order of Reference referring this case to Magistrate Judge Steven C. Yarbrough "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." ECF No. 18. That Order is hereby VACATED IN PART and solely with respect to the issues disposed of by this Order. For clarity, the Court will refer the sole remaining issue to Judge Yarbrough in this Order's "Conclusion" Section.

## BACKGROUND

On March 12, 2021, Petitioner was charged with one count of Reentry of a Removed Alien in violation of 8 U.S.C. §§ 1326(a) and (b). *United States v. Rocha-Alonso*, Case No. 2:21-CR-606-MIS (hereinafter "*Rocha-Alonso I*"). He was previously removed from the United States on January 24, 2020. *Id.* at CR Doc. 13 (Information). Petitioner pleaded guilty pursuant to a plea agreement and was sentenced on October 4, 2021 to 18 months of imprisonment and 2 years' supervised release. *Id.* at CR Docs. 16 (Plea Agreement), 24 (Judgment). On June 21, 2022, Petitioner was deported from the United States after having served his custody sentence. *Id.* at CR Doc. 28. Approximately two weeks later, he violated the terms of his release by unlawfully reentering the United States. *Id.* A petition was filed to revoke his supervised release. *Id.*

On July 7, 2022, the underlying criminal case was filed, charging Petitioner with Reentry of a Removed Alien in violation of 8 U.S.C. §§ 1326(a) and (b). *United States v. Rocha-Alonso*, Case No. 2:22-CR-1568-MIS (hereinafter "*Rocha-Alonso II*"). On September 22, 2022, Petitioner pleaded guilty pursuant to a Rule 11(c)(1)(C) "Fast Track Plea Agreement," which stipulated to a two-level downward departure in accordance with the United States Sentencing Guidelines (USSG) § 5K3.1 as long as he was not found to be within a criminal history category of VI. *Id.* at CR Doc. 14 (Plea Agreement). Petitioner agreed to an appellate waiver within the plea agreement. *Id.* at 6. At the change of plea hearing, Petitioner was represented by attorney David Benatar.

On October 27, 2022, a presentence investigation report (PSR) was submitted to the Court in *Rocha-Alonso II*. (CR Doc. 16). The PSR identified four criminal cases, filed between 2012 to 2016, in which Petitioner was charged and convicted with Reentry of a Removed Alien. *Id.*

2

The PSR calculated his total offense level at 10, with a criminal history category of VI.   *Id.*

On February 1, 2023, the Court held a sentencing hearing on both the supervised release violation in *Rocha-Alonso I* and the Reentry of a Removed Alien charge in *Rocha-Alonso II*. Mr. Benatar appeared as counsel for Petitioner on both matters and was present at the sentencing hearing.   *See Rocha-Alonso I*, CR Doc. 41 at 3.   Petitioner was sentenced to 21 months of imprisonment for violating the mandatory terms of his supervised release, and 30 months' imprisonment for Reentry of a Removed Alien, with the sentences to run consecutively for a total of 51 months' imprisonment.   *Id.* at 11-13.   The Court rejected the two-level downward reduction in the plea agreement due to his criminal history category of VI.   *Id.* at 12.

Petitioner now seeks to vacate his conviction and sentence.   The Motion raises four grounds for relief, although the last two appear duplicative:

(*Claim 1*)   Denial of due process in his deportation proceedings and failure of counsel to challenge those proceedings;

(*Claim 2*)   Ineffective assistance of counsel for failure to file a notice of appeal, argue for his sentences to run concurrently, and seek downward departures; and

(*Claims 3 and 4*)   Guilty plea was not made knowingly, intelligently, and voluntarily because the plea agreement was not explained to him, and he was denied access to counsel before and during his plea hearing.

The United States filed an answer to the Motion with supporting supplemental materials (CV Doc. 9), and Petitioner filed a reply (CV Doc. 16).

## DISCUSSION

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).   A district court may grant relief under

3

§ 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."   28 U.S.C. § 2255.

Because Petitioner is proceeding *pro se*, the Court will liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972).   This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based.   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel.   28 U.S.C. § 2255(a).   *See also United States v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255.").   A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.* at 688.   In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms.   *Id.* at 687-88.   The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably."   *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense.   *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir.

4

2001) (citing *Strickland*, 466 U.S. at 693-693).   In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice").

### A. Claim 1: Violations in the Deportation Proceedings

Petitioner asserts he was denied due process because he was excluded from "any and all Immigration Judicial Hearings" and "ordered removed/deported without [] being pr[e]sent in front of an Immigration Judge."   (CV Doc. 1 at 4).   He claims he "was not served at any time with [a] Notice to Appear[.]"   *Id.* at 13.   Due to the alleged exclusion from the proceedings, he appears to claim he was unable to exhaust his administrative remedies.

#### 1. Collateral Attack Waiver

The United States requests the Court to summarily deny Petitioner's due process argument as barred by his plea agreement.   The provision titled, "Waiver of Appeal Rights and Post-Conviction Challenges to Sentence," states, in pertinent part, that Petitioner "agrees to waive any collateral attack to [his] conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance."   *Rocha-Alonso II*, CR Doc. 14 at 6.   Further, under the section titled, "Immigration Removal and Other Immigration Consequences," Petitioner "admits he was the subject of a previous order of removal, deportation or exclusion," "agrees to the reinstatement of that previous order of removal, deportation or exclusion," and "agrees not to contest, either directly or by collateral attack, the reinstatement of the prior order of removal, deportation or exclusion."   *Id.* at 5.

A petitioner's waiver of the right to collaterally attack his or her convictions and sentence in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181-83 (10th Cir. 2001). When a petitioner waives the right to collaterally attack his or her sentence in a plea agreement but later files a motion pursuant to 28 U.S.C. § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights"). The Court must "strictly construe[ ]" the waiver's scope, and "any ambiguities . . . will be read against the Government and in favor of" the petitioner's right to collateral review. *Id.* (citation omitted).

### a. Scope of the Waiver

In this case, there can be no dispute that Petitioner's due process argument falls squarely within the scope of the collateral attack waiver. The plea agreement explicitly states that Petitioner agrees to waive any collateral attack on his conviction, sentence, and previous order of deportation, except on the issue of defense counsel's ineffective assistance. *Rocha-Alonso II*, CR Doc. 14 at 6. Petitioner's due process claim brought pursuant to 28 U.S.C. § 2255 is an explicit collateral attack on his conviction and the sentence imposed, as well as his previous order of deportation.

### b. Knowing and Voluntary

To determine whether a waiver of collateral review is knowing and voluntary, the Court

6

looks primarily at two factors: (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Rule 11 of the Federal Rules of Criminal Procedure.   *Hahn*, 359 F.3d at 1325.

Here, the plea agreement and plea colloquy demonstrate that Petitioner knowingly and voluntarily waived his right to collateral review.   The plea agreement itself contained a clear section in which Petitioner attested that his guilty plea was made freely and voluntarily:

VOLUNTARY PLEA

> 13. The defendant agrees and represents that this plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement.   There have been no representations or promises from anyone as to what sentence the Court will impose.   The defendant also represents that the defendant is pleading guilty because the defendant is in fact guilty.

*Rocha-Alonso II*, CR Doc. 14 at 7.

The paragraph above Petitioner's signature also confirms he entered the plea agreement knowingly and voluntarily:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in l8 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, elements of the offense, and of the consequences of entering into this agreement.   No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.* at 8.

Within the section titled, "Defendant's Admission of Fact," Petitioner acknowledged responsibility for the charge of Reentry of a Removed Alien:

> By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of committing a violation of 8 U.S.C. § 1326.

7

> I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt beyond a reasonable doubt, including any facts alleged in the Information that increase the statutory minimum or maximum penalties. I specifically admit and declare under penalty of perjury that I am not a citizen or national of the United States, I do not have any legal immigration status in the United States, and that I knowingly and voluntarily reentered the United States after previously having been deported, excluded or removed and without the express consent of the Secretary for Homeland Security.

*Id.* at 5.

In its Response to Petitioner's Motion, the United States submitted a certified transcript of the September 22, 2022 change of plea hearing. (CV Doc. 9-4). Petitioner is a native Spanish speaker. An interpreter was utilized for translation at the hearing. The colloquy confirmed that no one forced, threatened, or made any promises to get Petitioner to sign the plea agreement; he had an opportunity to discuss it with his attorney; the plea agreement was read to him in Spanish; he expressed confidence in understanding all of the terms and conditions of the agreement; and he applied his signature to the agreement. *Id.* at 4-6, 9-11. The terms of the collateral attack waiver within the plea agreement were discussed during the hearing, and Petitioner confirmed he understood the consequences of the waiver. *Id.* at 14-15. Petitioner further acknowledged that the plea agreement relinquished his right to challenge the reinstatement of the deportation order that was previously entered against him. *Id.* at 16-17.

Consequently, Magistrate Judge Kevin R. Sweazea accepted Petitioner's guilty plea, finding he was "competent and capable of entering an informed plea," he was "aware of the nature of the charge against [him] and the consequence of [his] plea," and it was "knowingly and voluntarily and it [wa]s supported by sufficient facts." *Id.* at 18. *See e.g.*, *United States v. Blonner*, 2025 WL 817413, at *1 (10th Cir. Mar. 14, 2025) ("both the written plea agreement and

the transcript of the plea hearing indicate that [Petitioner] knowingly and voluntarily waived his right to appeal, and nothing in the record indicates that he did not act knowingly and voluntarily. It would be frivolous to contend he did not knowingly and voluntarily accept the waiver.").

Based on the language in the plea agreement and the plea colloquy, the Court finds Petitioner knowingly and voluntarily waived his right to collaterally attack his conviction and sentence, including the prior order of removal and deportation.

### c. Miscarriage of Justice

"[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.). Petitioner bears the burden of establishing that one of these four situations exists. *Sandoval*, 477 F.3d at 1208. Here, Petitioner does not assert that any of these four situations occurred and has, therefore, failed to show that enforcing the waiver would result in a miscarriage of justice. Consequently, the Court finds Petitioner's due process argument to be barred by his plea agreement in *Rocha-Alonso II*.

### 2. Ineffective Assistance of Counsel

Within Claim 1, Petitioner additionally argues his counsel was ineffective by failing "to file proper motions" to "challeng[e] the validity of any and all Removal/Deportations" because he was "not served at any time with [a] Notice to Appear." (CV Doc. at 4, 13). He also continues to make the same argument in Claim 2. (CV Doc. at 14). The Court has thoroughly reviewed

9

his position under both claims and determines it lacks merit.

The elements that the government must establish to convict an individual of an illegal reentry offense are: (1) the defendant was an alien; (2) who has previously been deported or removed from the United States; (3) and thereafter reentered the United States; (4) without permission.   8 U.S.C. § 1326.   A final administrative deportation order is presumed legal. *United States v. Adame*, 607 F.3d 647, 651 (10th Cir. 2010).   Only if three elements are present can a deportation order in a criminal prosecution for Reentry of a Removed Alien be challenged: (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.   8 U.S.C. § 1326(d).   Where, as here, the United States demonstrates Petitioner was deported because of a final deportation order, the burden shifts to Petitioner to prove each of these elements to overcome the presumed legality.   *Adame*, 607 F.3d at 651.

The United States submitted a record of Petitioner's administrative proceedings going back to his first removal in 2012.   (CV Docs. 9-1 to 9-3).   These documents show that on November 14, 2000, Petitioner was, in fact, served with a Notice to Appear due to an illegal entry.   (CV Doc. 9-1).   Petitioner signed the Certificate of Service after the time and place of the hearing was provided to him in Spanish; however, he did not appear at his removal proceeding. *Id.* at 3-4.   Subsequent to his deportation, Petitioner continued to reenter the United States resulting in the issuance of separate Notices of Intent/Decisions to Reinstate Prior Order of deportation, exclusion, and removal on May 6, 2013, October 17, 2014, August 23, 2016, January 13, 2020, March 12, 2021, and June 16, 2022.   (CV Doc. 9-3 at 1, 3, 5, 7, 9, 11).   Each of these Notices allowed for Petitioner to contest the fact that he had illegally reentered the United States.

10

*Id.* Petitioner placed his signature on each Notice and checked the box for "I do not wish to make a statement contesting this determination." *Id.*

The records submitted by the United States show that Petitioner cannot meet the first element requiring him to exhaust administrative remedies that were available to seek relief against the removal orders. To satisfy the exhaustion requirement under § 1326(d), a defendant "must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *United States v. Ruiz-Gomez*, Case No. 19-CR-416-WJ, 2019 WL 1767402, *4 (D.N.M. Apr. 22, 2019) (quoting *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010)). The Tenth Circuit has held that "[a] defendant 'who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust his administrative remedies under § 1326(d)(1).'" *United States v. Melendez*, 642 F.App'x 859, 862 (10th Cir. 2016) (quoting *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005)). *See also United States v. Favela-Gonzalez*, NO. 14-CV-257-RB/GBW, 2015 WL 13667412, at *7 (D.N.M. Jan. 30, 2015) ("Petitioner has provided no evidence that he exhausted, or even pursued, any administrative remedies for relief against the order, let alone any evidence that he provided notice of exhaustion to his counsel prior to pleading guilty. Without such information, a failure to challenge the deportation order was not ineffective.").

Here, there is no showing that Petitioner's counsel was ineffective in failing to file a motion to challenge the administrative removal proceedings because nothing in the record suggests that any such efforts would have been successful or caused Petitioner to reject his plea offer and insist on going to trial. Despite Petitioner's argument otherwise, the United States presented documentation reflecting that he was given notice of his original and subsequent removal proceedings and opted not to challenge the deportation determinations. Petitioner's

reply neither challenges the authenticity of the exhibits submitted by the government, nor provides any evidence that he exhausted his remedies.

Also notable to the Court is Petitioner's assertion that he "does not know what prior conviction was used for Immigration Court to Remove/Deport" him; however, he explicitly cites to case no. 2:21-CR-606-MIS on the first page of his Motion (CV Doc. 1 at 1), and confirms at his change of plea hearing that he had the opportunity to discuss all the facts and circumstances of his case with his attorney, (CV Doc. 9-4 at 9). It is not ineffective assistance of counsel to fail to make meritless arguments. *See Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 694 (no ineffective assistance absent showing of reasonable probability that outcome would have been different)). Further, his counsel submitted a sworn affidavit attesting that Petitioner "did not raise any concerns to [him] about the validity of his prior removal order[.]" (CV Doc. 9-5 at 2).

Therefore, Claim 1 must be dismissed because his due process challenge is subject to the collateral attack waiver in his plea agreement, and his argument for ineffective assistance of counsel related to his administrative removal proceedings does not meet the *Strickland* standard.

### B. Claim 2: Ineffective Assistance of Counsel for Failure to File Notice of Appeal, Request Concurrent Sentences, and Argue for Downward Departures

#### 1. Notice of Appeal

Petitioner asserts his counsel was ineffective for failing to file a notice of appeal. (CV Doc. 1 at 6). He claims that on the date of his sentencing hearing he asked his counsel to file an appeal to which his counsel responded, "he would and not to worry." *Id.* After some time had passed, Petitioner states he wrote to his counsel to inquire about the status of his appeal, but did not receive a response. *Id.* The Court notes that a pleading, such as Petitioner's here, may be

treated like an affidavit so long as it "alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

In response to these allegations, Petitioner's counsel submitted a sworn affidavit with the following attestation:

> I reviewed the file notes and all court records connected to this case and I can confirm that Mr. Rocha-Alonso never instructed me to file an appeal of his sentence.   I would have filed the appeal if Mr. Rocha-Alonso told me to do so.

(CV Doc. 9-5 at 2).

In *Garza v. Idaho*, 586 U.S. 232, 241 (2019), the United States Supreme Court found an attorney to have rendered deficient performance by not filing a notice of appeal in light of clear requests from defendant despite an appeal waiver in the plea agreement.   *Garza* explained "simply filing a notice of appeal does not necessarily breach a plea agreement, given the possibility that the defendant will end up raising claims beyond the waiver's scope.   And in any event, the bare decision whether to appeal is ultimately the defendant's, not counsel's, to make." *Id.*   Thus, "[w]here . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions" even where the defendant's plea agreement contains an appellate waiver.   *See id.* at 241-242.   This Court has since followed the holding in *Garza*.   *See e.g., United States v. Nevarez-Ledezma*, No. 2:19-CR-01379-KG-KRS, No. 2:20-CV-01144-KG-KRS, 2021 WL 2644417, at *11 (D.N.M. June 28, 2021), *report and recommendation adopted*, 2021 WL 4317142 (D.N.M. Sept. 22, 2021).

Because both parties have offered contradictory statements regarding whether Petitioner requested his counsel to file an appeal on his behalf, the Court cannot, without more, resolve the motion as to this issue on the current record.   Even the United States appears to acknowledge the

need for an evidentiary hearing.   *See* (CV Doc. 9 at 1) ("The United States respectfully requests

that the Defendant's motion be denied and dismissed with prejudice, without an evidentiary

hearing, except on the issue of whether the Defendant instructed his defense counsel to file an

appeal.").   *See also United States v. Palermo*, 175 F. App'x 244, 246 (10th Cir. 2006) (district

court erred in assessing credibility of defendant's version of events without an evidentiary

hearing); *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) (remanded for an

evidentiary hearing concerning whether counsel disregarded the petitioner's request to file a

notice of appeal, even though movant pleaded guilty, and his plea agreement contained an appeal

waiver).   Since there is a factual dispute concerning whether Petitioner asked Mr. Benatar to file

an appeal on his behalf, a limited evidentiary hearing is required.

### 2. Consecutive Sentences

Petitioner was sentenced to 21 months of imprisonment for violating his mandatory terms

of supervised release, and 30 months' imprisonment for Reentry of a Removed Alien, with the

terms to run consecutively for a total of 51 months' imprisonment.   *See Rocha-Alonso I*, CR

Doc. 41 at 11-15.   Petitioner asserts his attorney was ineffective for failing to request that his

sentences be applied concurrently.   (CV Doc. 1 at 14).   He argues his guilty plea was "induced

by a false promise" by his counsel "who stated to [him] that both sentence[]s were going to be

running concurrent[.]"   *Id.*   Petitioner contends that he would not have pleaded guilty if his

attorney informed him that his sentences could have run consecutively.   *Id.*

Petitioner's assertion that his plea was induced by a false promise is not credible in light

of his testimony at his plea and sentencing hearings.   As previously discussed, his plea colloquy

evidenced that no one forced, threatened, or made any promises to get Petitioner to sign the plea

agreement, and he readily admitted his guilt.   (CV Doc. 9-4 at 11, 16-17).   At the sentencing

14

hearing, Petitioner was again asked whether anyone had promised him anything to get him to

admit to the violations.   *See Rocha-Alonso I*, CR Doc. 41 at 6.   He answered in the negative.

*Id.*   Then, counsel for the United States and counsel for the Petitioner addressed on the record

and in the presence of Petitioner whether the sentences for *Rocha-Alonso I* and *II* should run

consecutively or concurrently:

> UNITED STATES:   Your Honor, in regards to the revocation, the Government is
> not opposed to a low end, which would be the 21 months.   In addition to the
> underlying case, the Government would not be opposed to the low end; however,
> the Government would be opposed to running those full sentences concurrently,
> and so the Government would be asking that half of that be run consecutive.   The
> Government has the same concerns that the Court does and believes that that
> would be a just sentence, which would be a total of 36 months.
>
> THE COURT:   So running...
>
> UNITED STATES:   I'm sorry, that's -- yeah.
>
> THE COURT:   Is it 33 months?   That's what my math says.
>
> UNITED STATES:   It is.   It would be the 24 -- you're correct.   I did 24 plus 12,
> so half of...yes, Your Honor.   Thank you.
>
> THE COURT: Okay.   All right.   Thank you.   Mr. Benatar?
>
> MR. BENATAR:   Your Honor, after having spoken with Mr. Rocha, we actually
> were planning to ask for low end with a 50/50, so that would be our request in this
> case.   We do understand the Court's concern; however, I would note that that
> would be pretty sufficiently incremental.   He'll have gone from 18 months on his
> last reentry to now the proposed 33 months, so he's facing significantly more time.
> That will hopefully stress on him the gravity of his actions.

*Id.* at 7.

After the Court expressed concern for Petitioner's numerous Driving While Intoxicated

convictions and the fact that he illegally reentered the United States after a previous deportation

following multiple felony illegal reentry convictions, Petitioner was given the opportunity to

comment before sentencing.   *Id.* at 10-11.   Petitioner indicated he had nothing to add, and did

not question his attorney's advocacy for half of his two sentences to run concurrently with the remaining half to run consecutively.   *Id.*   Petitioner offers no credible evidence to support his assertion that his attorney did not request a concurrent sentence because the record indicates otherwise.   The record also belies his assertion that he was coerced into pleading guilty based on his attorney's representations that his sentences would be applied concurrently.

   "[E]ven when trial counsel fails to advocate for concurrent federal and state sentences, a § 2255 movant still cannot satisfy *Strickland's* prejudice requirement if he fails to demonstrate a reasonable probability that the sentencing judge would have exercised his discretion in the petitioner's favor."   *United States v. Lezine*, CIV 14-0785 JB/KBM, 2015 WL 13665370, at *4 (D.N.M. Feb. 22, 2015), *report and recommendation adopted*, 2015 WL 1568436 (D.N.M. Mar. 30, 2015) (citing *Prewitt v. United States*, 83 F.3d 812 (7th Cir. 1996) (reasoning that the federal judge's discretion in sentencing the petitioner meant that "only the *possibility* existed he would receive a concurrent sentence," which did not qualify as actual prejudice); *United States v. Alvarez*, 184 F. App'x 876, 881 (11th Cir. 2006) (holding that a movant could not show prejudice where his contention that the sentencing judge might have imposed a concurrent sentence was "mere speculation")).   Here, the record reflects that despite Petitioner's attorney requesting half of his two sentences run concurrently, the Court used its discretion and determined that both of his sentences must be served consecutively.

   Even if the Court accepted Petitioner's argument that his attorney provided him with inaccurate information as to whether his two sentences would run consecutively or concurrently, Section 2255 provides no relief.   Well-settled law establishes that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."   *United States v. Gordon*, 4 F.3d 1567,

16

1570-71 (10th Cir. 1993) (citations omitted).   *See also United States v. Silva*, 430 F.3d 1096,

1100 (10th Cir. 2005) (pro se movant not entitled to relief under § 2255 even if counsel

incorrectly advised movant that he "was facing a much shorter sentence than he received").

Consequently, Petitioner has established neither deficient performance nor prejudice, and thus he

fails to show ineffective assistance of counsel under *Strickland*.

### 3. Downward Departures

Petitioner argues his attorney was ineffective for failing to request a "fast track four level

departure" and a "four level point adjustment" for "over-represented criminal history."   (CV

Doc. 1 at 14).

Within his plea agreement, Petitioner agreed to the following provisions related to

potential departures from the USSG:

> e.      *Unless the defendant* previously has been convicted of murder, a forcible
> sex offense, or a child sex offense involving physical contact or *has a Criminal
> History Category of VI, the Government agrees, pursuant to Federal Rule of
> Criminal Procedure 11(c)(l)(C), to a two-level downward departure/adjustment
> pursuant to USSG § 5K3.1* to determine the defendant's Final Adjusted Offense
> Level. The defendant's Adjusted Offense Level will be the sum of Base Offense
> Level 8 plus the USSG § 2L1.2 sentencing guideline adjustments for specific
> offense characteristics as determined by the sentencing court. *The parties agree,*
> pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), *to a sentence within
> the resulting sentencing guideline range* after the application of adjustments for
> specific offense characteristics to the Defendant's base offense level as calculated
> pursuant to USSG § 2L.1.2, *minus a downward adjustment for acceptance of
> responsibility, and minus a two-level downward departure pursuant to USSG §
> 5K3.1, with no other reductions, departures or variances to be applied*.
>
> f.      *The defendant agrees not to seek any further reduction, departure,
> deviation, or variance* from the guideline sentencing range in the Final Adjusted
> Offense Level or the Criminal History Category as determined by the Court,
> through motion or by argument at sentencing pursuant to l8 U.S.C. § 3553(a),
> *United States v. Booker*, 543 U.S. 220 (2005), or otherwise. *This specifically
> precludes any claim by the defendant*, pursuant to USSG § 4A1.3, *that the
> criminal history category overstates the seriousness of defendant's criminal
> history*.

17

*Rocha-Alonso II*, CR Doc. 14 at 3-4 (emphasis added).   Importantly, his criminal history category was left to be determined by the United States Probation Office via a PSR.

During the change of plea hearing, counsel for Petitioner discussed the impact of the above provisions.   (CV Doc. 9-4 at 11-13).   Petitioner affirmatively indicated that he understood the terms of the plea agreement, which included the restriction on seeking a downward departure for overstated criminal history and that he would not qualify for an additional departure under the fast-track agreement if he was found to be in the criminal history category of VI.   *Id.* at 13.   *See United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) ("A defendant's statements at a plea hearing should be regarded as conclusive . . . in the absence of a believable, valid reason justifying departure from the apparent truth of those statements.") (internal quotation omitted).

Subsequent to the plea hearing, a PSR was submitted by the United States Probation Office, calculating his total offense level at 10 with a criminal history category of VI, which eliminated his ability to request a two-level downward departure pursuant to USSG § 5K3.1. *Rocha-Alonso II*, CR Doc. 16 at 8.   Based upon a total offense level of 10 and a criminal history category of VI, the guideline imprisonment range was 24 to 30 months.   *Id.* at 11.   The PSR further indicated that had Petitioner declined to enter into the plea agreement the statutory penalties would have remained the same, however, the total offense level would have been 12, which when combined with a criminal history category of VI, would have resulted in a guideline imprisonment range of 30 to 37 months.   *Id.*

Due to his criminal history category of VI, he did not qualify for a downward departure pursuant to USSG § 5K3.1.   He also could not seek a point adjustment for over-represented criminal history as per the terms of the plea agreement.   Thus, it was not unreasonable for

18

Petitioner's counsel to not pursue reductions for which he was ineligible.   *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that the failure to raise a meritless objection is not ineffective assistance of counsel); *United States v. Sanchez[-]Calderon*, No. CV 10-0618, JB/LAMCR 09-1801 JB, 2010 WL 11619202, at *3 (D.N.M. Dec. 9, 2010), *report and recommendation adopted sub nom. United States v. Calderon*, 2011 WL 13291116 (D.N.M. Jan. 31, 2011) (attorney's decision not to pursue a downward departure for which his client would have been ineligible because of his criminal history category does not fall below an objective standard of reasonableness.").   Because such an argument would have failed on the merits, Movant fails to demonstrate prejudice.

### C. Claims 3 and 4: Guilty Plea was not made Knowingly, Intelligently, and Voluntarily because Counsel was not Present to Explain Terms of Plea Agreement

Petitioner asserts in both Claims 3 and 4 that he received ineffective assistance of counsel and entered into a plea agreement unknowingly, unintelligently, and involuntarily because the content of his plea agreement was not explained to him by his counsel, and he was denied access to consult his counsel before and during his hearings.   Petitioner also contends that he did not sign his plea agreement.

The Court finds that Petitioner's contentions are completely belied by the record.   The plea agreement itself is marked with Petitioner's signature.   *See Rocha-Alonso II*, CR Doc. 14 at 8.   At the change of plea hearing, Magistrate Judge Kevin R. Sweazea directly asked Petitioner if he personally applied his signature to the agreement, and Petitioner answered in the affirmative:

> THE COURT:   Your attorney has given the Court a written plea agreement.   On the last page of that document, above your typewritten name, there appears to be a signature.   Was the plea agreement read to you in Spanish, did you discuss it with your attorney, and then did you sign it?
>
> [DEFENDANTS ANSWERED SEPARATELY, IN SPANISH]

19

INTERPRETER:   Yes[.]

(CV Doc. 9-4 at 9-10).   Magistrate Sweazea also asked Petitioner if his attorney explained all of the terms and conditions of the plea agreement and if he understood those terms and conditions, and Petitioner responded "Yes."   *Id.* at 10-11.   It is clear from the transcript that his attorney, Mr. Benatar was present through the entirety of the change of plea hearing, and that Petitioner declined the opportunity offered by the Court to ask his attorney any questions about the plea agreement during the hearing.   *Id.* at 10.   Nowhere in the colloquy was Petitioner denied the opportunity to speak.

Similarly, during the sentencing hearing, Mr. Benatar was again present and available for Petitioner.   (*Rocha-Alonso I*, CR Doc. 41).   Upon being asked, Petitioner indicated he was satisfied with the work performed by his attorney.   *Id.* at 6.   The Court directly informed Petitioner that he did not have to plead guilty; however, he opted to proceed.   *Id.* at 4-5. Notably, despite his assertion in the instant motion that his counsel was not present, he contradictorily claims that on the date of his sentencing hearing he asked his counsel to file an appeal to which his counsel responded, "he would and not to worry."   (CV Doc. 1 at 5).

Because the transcripts of hearings detailed herein suggest that Mr. Benatar was present and available for consultation and did, in fact, advise Petitioner about the terms and conditions of the plea agreement, Claims 3 and 4 must be dismissed and denied.

### Evidentiary Hearing

Except for Petitioner's claim related to counsel's failure to file an appeal, the files and records in this case conclusively show that Petitioner is not entitled to relief.   Accordingly, except for the claim related to counsel's failure to file an appeal, no evidentiary hearing is

required on Petitioner's claims.   *See* 28 U.S.C. § 2255; *Kilpatrick*, 1997 WL 537866, at *3

(allegations of ineffective assistance must be specific and particularized; conclusory allegations

do not warrant hearing); *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing

required where factual matters raised by Section 2255 petition may be resolved on record);

*United States v. Barboa*, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless

"petitioner's allegations, if proved, would entitle him to relief" and allegations are not

contravened by record).

      **IT IS THEREFORE ORDERED** the Order of Reference issued on November 12, 2024,

ECF No. 18, is **VACATED IN PART** and solely as to the issues disposed of by this Order.

      **IT IS FURTHER ORDERED** that Petitioner Javier Rocha-Alonso's Motion to Vacate

Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 21) is **DENIED** except as to the claim

that counsel failed to file a requested appeal.

      **IT IS FURTHER ORDERED** that Petitioner Javier Rocha-Alonso's Motion for

Appointment of Counsel (CV Doc. 15) is **GRANTED** for the limited purpose of assisting

Petitioner at the evidentiary hearing in presenting his claim regarding plea counsel's failure to file

a requested appeal.   The Clerk's Office will coordinate with the Federal Public Defender's

Office to effectuate the appointment.

      **IT IS FURTHER ORDERED** that the sole remaining issue, i.e., that counsel rendered

Constitutionally ineffective assistance by failing to file a requested appeal, is **REFERRED** to

Magistrate Judge Steven C. Yarbrough for an evidentiary hearing and to perform any legal

analysis required to recommend to the Court an ultimate disposition of that issue.   The

Magistrate Judge will submit an analysis, including findings of fact, if necessary, and

recommended disposition, to the District Judge assigned to the case, with copies provided to the

parties. The parties will be given the opportunity to object to the proposed findings, analysis, and

disposition as described in 28 U.S.C. § 636(b)(1).    Objections must be filed within fourteen (14)

days after being served with a copy of the proposed disposition.


_____

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE